AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>249 E. Dry Creek Road<br>San Tan Valley AZ, 85143 | Case No. 22-5164MB |

### SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before _4/28/22_ *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona.</u>

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _April 14, 2022 3:27 pm_     _Deborah M. Fine_
                                          *Judge's signature*

City and state: <u>Phoenix, Arizona</u>     <u>Honorable Deborah M. Fine, U.S. Magistrate Judge</u>
                                          *Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a single-story residence located at 249 E. Dry Creek Road, San Tan Valley, AZ 85143 (Subject Premises) and further described as a residence with brown-colored stucco with both two-car and single-car attached garages and a tan shingled roof. The residence front door faces north. The number "249" is clearly marked placard just to the east of the two-car garage door.



17

## ATTACHMENT B

*Property to be seized*

Agents are authorized to search for evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 924(a)(1)(A) (False Statement During the Purchase of a Firearm), including:

1.     Any firearms including firearms parts, frames, receivers, accessories, magazines, cases, boxes.

2.     Any ammunition and components, including bullets, brass, casings, boxes, and cases.

3.     Concealed Weapons Permit(s).

4.     Records, documents, notes, receipts, ledgers, invoices, indicia, or photographs showing the acquisition or sale of any firearms and firearm parts.

5.     Receipts, bank account records, buyer or seller lists, money transfer records, agreements for storage facilities, records of mail service, ledgers, and notebooks showing the acquisition and/or disposition of firearms and firearm parts.

6.     Books, records, receipts, notes, ledgers, personal checks and other papers relating to the transportation, ordering, and purchase of firearms, firearm accessories, or ammunition.

7.     Ledgers, customer lists, contact lists, inventory lists, vendor lists, or any notes containing the individual names of such persons, telephone numbers or addresses of such persons.

8.     Bank documents and records, financial documents and records, and any records and documents relating to any bank or financial transactions, including: correspondence, signature cards and applications for all credit card accounts, investment accounts, and retirement accounts; copies of monthly, quarterly, yearly or periodic account statements; pre-paid credit/debit cards; money wrappers; copies of check journals, check

18

ledgers, checkbooks, check registers, deposit tickets, deposit items, credit memos, debit memos, canceled checks, loan applications, financial statements, mortgage or promissory notes; copies of loan ledger accounts; copies of annual loan statements; application for bank drafts, cashier's checks, and foreign drafts; and records relating to employment, wages earned and paid, business income earned, and other compensation records.

9.      Records indicating occupancy, residency, or rental of the search location, including rental or lease agreements, and keys.

10.      Records pertaining to the rental of self-storage units, post office boxes, or mailboxes.

11.      Electronic equipment, including cellular telephones, computers, disks, thumb drives, and any media storage device, GPS devices and their memory, and related manuals used to generate, transfer, count, record or store the information described in this Attachment B. For any computer or electronic storage medium whose seizure is otherwise authorized by this warrant, and any computer or electronic storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, the "Electronic Storage Device"), this warrant also authorizes the seizure of the following:

a.      Evidence of who used, owned, or controlled the Electronic Storage Device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, and browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.      Call details including call history, duration of calls, text messages, and text message history;

c.      Electronic correspondence and communications stored on, or accessed through, the Electronic Storage Device relating to the procurement of

export-controlled items, to include e-mails and attached files, text messages, any Short Message Service messages (SMS), Instant Messages (IM), Multimedia Message Service messages, or similar text or electronic messages made through additional applications from which communication can be made, and instant messaging logs;

d. Contact lists stored on or accessed through the Electronic Storage Device, to include telephone and e-mail contact names, telephone numbers, addresses, and e-mail addresses;

e. Evidence of software that would allow others to control the Electronic Storage Device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

f. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

g. Evidence indicating how and when the Electronic Storage Device was accessed or used to determine the chronological context of Electronic Storage Device access, use, and events relating to the crime under investigation and to the user of the Electronic Storage Device;

h. Evidence of the attachment to the Electronic Storage Device of other storage devices or similar containers for electronic evidence;

i. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Electronic Storage Device;

j. Evidence of the times the Electronic Storage Device was used;

k. Passwords, encryption keys, and other access devices that may be necessary to access the Electronic Storage Device;

l.      Documentation and manuals that may be necessary to access the Electronic Storage Device or conduct an examination of the Electronic Storage Device;

m.      Any records of or information about Internet Protocol addresses used by the Electronic Storage Device;

n.      Contextual information necessary to understand the evidence described in this Attachment B; and,

o.      Any peripheral equipment used to facilitate the transmission, creation, display, encoding or storage of records, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners.

12.    Items used for identification, including identification cards under fictitious names, and any other type of false identifying documents.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>249 E. Dry Creek Road<br>San Tan Valley, AZ 85143 | Case No. 22- 5164mB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. § 924 | False Statement During the Purchase of a Firearm |

The application is based on these facts:

**See attached Affidavit of Special Agent Daniel Kolodziej**

☒ Continued on the attached sheet.

☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Coleen Schoch

_____
*Applicant's Signature*

Daniel Kolodziej, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Apri 14, 2022
3:27 pM

_____
*Judge's signature*

City and state: Phoenix, Arizona

Honorable Deborah M. Fine, U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

*Property to be searched*

The property to be searched is a single-story residence located at 249 E. Dry Creek Road, San Tan Valley, AZ 85143 (Subject Premises) and further described as a residence with brown-colored stucco with both two-car and single-car attached garages and a tan shingled roof. The residence front door faces north. The number "249" is clearly marked placard just to the east of the two-car garage door.



17

## ATTACHMENT B

*Property to be seized*

Agents are authorized to search for evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 924(a)(1)(A) (False Statement During the Purchase of a Firearm), including:

1.  Any firearms including firearms parts, frames, receivers, accessories, magazines, cases, boxes.

2.  Any ammunition and components, including bullets, brass, casings, boxes, and cases.

3.  Concealed Weapons Permit(s).

4.  Records, documents, notes, receipts, ledgers, invoices, indicia, or photographs showing the acquisition or sale of any firearms and firearm parts.

5.  Receipts, bank account records, buyer or seller lists, money transfer records, agreements for storage facilities, records of mail service, ledgers, and notebooks showing the acquisition and/or disposition of firearms and firearm parts.

6.  Books, records, receipts, notes, ledgers, personal checks and other papers relating to the transportation, ordering, and purchase of firearms, firearm accessories, or ammunition.

7.  Ledgers, customer lists, contact lists, inventory lists, vendor lists, or any notes containing the individual names of such persons, telephone numbers or addresses of such persons.

8.  Bank documents and records, financial documents and records, and any records and documents relating to any bank or financial transactions, including: correspondence, signature cards and applications for all credit card accounts, investment accounts, and retirement accounts; copies of monthly, quarterly, yearly or periodic account statements; pre-paid credit/debit cards; money wrappers; copies of check journals, check

18

ledgers, checkbooks, check registers, deposit tickets, deposit items, credit memos, debit memos, canceled checks, loan applications, financial statements, mortgage or promissory notes; copies of loan ledger accounts; copies of annual loan statements; application for bank drafts, cashier's checks, and foreign drafts; and records relating to employment, wages earned and paid, business income earned, and other compensation records.

9.     Records indicating occupancy, residency, or rental of the search location, including rental or lease agreements, and keys.

10.     Records pertaining to the rental of self-storage units, post office boxes, or mailboxes.

11.     Electronic equipment, including cellular telephones, computers, disks, thumb drives, and any media storage device, GPS devices and their memory, and related manuals used to generate, transfer, count, record or store the information described in this Attachment B. For any computer or electronic storage medium whose seizure is otherwise authorized by this warrant, and any computer or electronic storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, the "Electronic Storage Device"), this warrant also authorizes the seizure of the following:

a.     Evidence of who used, owned, or controlled the Electronic Storage Device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, and browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.     Call details including call history, duration of calls, text messages, and text message history;

c.     Electronic correspondence and communications stored on, or accessed through, the Electronic Storage Device relating to the procurement of

export-controlled items, to include e-mails and attached files, text messages, any Short Message Service messages (SMS), Instant Messages (IM), Multimedia Message Service messages, or similar text or electronic messages made through additional applications from which communication can be made, and instant messaging logs;

      d.    Contact lists stored on or accessed through the Electronic Storage Device, to include telephone and e-mail contact names, telephone numbers, addresses, and e-mail addresses;

      e.    Evidence of software that would allow others to control the Electronic Storage Device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

      f.    Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

      g.    Evidence indicating how and when the Electronic Storage Device was accessed or used to determine the chronological context of Electronic Storage Device access, use, and events relating to the crime under investigation and to the user of the Electronic Storage Device;

      h.    Evidence of the attachment to the Electronic Storage Device of other storage devices or similar containers for electronic evidence;

      i.    Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Electronic Storage Device;

      j.    Evidence of the times the Electronic Storage Device was used;

      k.    Passwords, encryption keys, and other access devices that may be necessary to access the Electronic Storage Device;

20

l. Documentation and manuals that may be necessary to access the Electronic Storage Device or conduct an examination of the Electronic Storage Device;

m. Any records of or information about Internet Protocol addresses used by the Electronic Storage Device;

n. Contextual information necessary to understand the evidence described in this Attachment B; and,

o. Any peripheral equipment used to facilitate the transmission, creation, display, encoding or storage of records, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners.

12. Items used for identification, including identification cards under fictitious names, and any other type of false identifying documents.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Daniel Kolodziej, being first duly sworn, hereby deposes and states as follows:

### I.    INTRODUCTION AND AGENT BACKGROUND

1.      Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises located at 249 E. Dry Creek Road, San Tan Valley, AZ 85143, further described in Attachment A (**Subject Premises**), to search for a seize the items outlined in Attachment B, which represent evidence, fruits, and/or instrumentalities of the criminal violations further described below.

2.      As your Affiant, I am employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since March 2020. As a Special Agent with ATF, I completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia, and Special Agent Basic Training for the ATF, also located at FLETC Glynco. As a Special Agent with the ATF, I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 United States Code (U.S.C.) Section 3051, particularly those laws found in Title 18 and Title 21 of the United States Code (U.S.C.). Prior to my employment with the ATF, I was employed by the Department of Homeland Security (DHS) where I worked as a Border Patrol Agent for one year. Prior to my time as a Border Patrol Agent, I worked as a police officer for the towns of St. John (IN) and Dyer (IN) for approximately eight years.

3.      By virtue of my employment as a Special Agent and prior law enforcement experience, I have performed various tasks, which include, but are not limited to: (a) involvement in numerous investigations in illegal firearms and narcotics distributions

conspiracies, participating in multiple arrests of individuals for firearms and narcotic related offenses, participation in the service of multiple firearms and narcotic related search warrants, (b) functioning as a surveillance agent, therefore observing and recording movements of persons trafficking firearms and or narcotics: (c) interviewing witnesses, confidential sources (CS) relative to the illegal trafficking or firearms and or narcotics; (d) functioning as a case agent, and working with prosecutors to provide useful courtroom testimony.

4.     In the course of conducting investigations, I have personally interviewed persons involved in the illegal distribution of firearms. I have become aware of techniques and practices used by firearms traffickers to avoid detection by law enforcement. Among these techniques are the use of counter surveillance, multiple locations at which to conduct illegal activities, hidden compartments in vehicles used to conceal firearms and currency, pay phones, mobile telephones, voice mail, texting, instant messaging, email and the use of numerous associates and "workers" to further their criminal organization. I have also become aware of the various techniques' individuals use to conceal the source or nature of firearms trafficking proceeds. Among the techniques utilized are the purchase of assets and financial instruments in nominee names using cash and "structuring" transactions so as to avoid certain reporting requirements of financial institutions.

5.     The statements contained in this Affidavit are based in part on information provided to your Affiant, by Special Agents of the ATF and other law enforcement officers, either directly or indirectly through their reports or affidavits, and surveillance conducted by law enforcement officers.

6.     Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

2

7.     Based on the facts set forth in this Affidavit, your Affiant submits there is probable cause to believe that violations of 18 U.S.C. 924(a)(1)(A), False statement in connection with the purchase of a firearm.

**II.    PROBABLE CAUSE**

8.     The present investigation began in December 2021. With information provided from ATF's Crime Gun Intelligence Center (CGIC), ATF Special Agents (SAs) identified Jae'Shawn RUTHERFORD as a person of interest in connection with straw purchasing and the trafficking of firearms.

9.     SAs were made aware of approximately 14 firearms of similar make and model purchased by RUTHERFORD in October and November 2021. As of April 11, 2022, RUTHERFORD has purchased 30 known firearms since January 2021, for over $9,000. RUTHERFORD's reported income for the 2nd Quarter 2021 was $1,915 and for the 4th Quarter 2021 was $1,437.47.

10.     On February 9, 2022, at approximately 2:44 PM, SAs Gibbons and Kolodziej responded to Avista Senior Living located at, 239 N. Robson, Mesa, AZ 85201, in reference to a non-custodial interview of RUTHERFORD. Special Agents identified themselves as ATF Agents and asked RUTHERFORD if he had time to speak to them, and RUTHERFORD said yes. SA Kolodziej asked RUTHERFORD if he was familiar with ATF and their mission. RUTHERFORD advised that he was.

11.     SA Kolodziej asked RUTHERFORD if he worked at Avista, which he stated yes. SA Kolodziej inquired as to what his job was and asked how long he had been working at Avista. RUTHERFORD stated he had been working for Avista for approximately one year and advised that he provided care for the residents of the senior living facility.

12.     SA Kolodziej asked RUTHERFORD if he owned any firearms, which he stated yes. SA Kolodziej asked RUTHERFORD if he had recently purchased any firearms, which he also stated yes. RUTHERFORD advised he buys firearms from local shops and

3

then sells them at gun shows in the area for small profits. RUTHERFORD stated the last gun show he attended was in Ocotillo in January 2022.

13.     SA Kolodziej advised RUTHERFORD that one of the firearms he sold, a Bushmaster, Carbon 15, S/N D10372, was recovered in the commission of a crime. SA Kolodziej asked RUTHERFORD if he remembered this firearm, which he said no. SA Kolodziej asked if RUTHERFORD kept any records of the firearms he has sold, which he said no.

14.     SA Kolodziej asked RUTHERFORD when he last purchased a firearm. RUTHERFORD stated he last purchased a firearm yesterday (02/08/2022). SA Kolodziej asked what RUTHERFORD purchased and was informed it was a Taurus G2C. SA Kolodziej notes that RUTHERFORD purchased a Taurus G2C (SN ACL577913) bought on 02/08/2022 from Arizona Firearms in Gilbert, AZ. SA Kolodziej asked about the other firearm RUTHERFORD purchased on 02/08/2022, another Taurus G2C (SN ACN735181) bought from DK Defense in San Tan Valley, AZ. RUTHERFORD admitted to purchasing that firearm.

15.     SA Kolodziej asked RUTHERFORD how many firearms he currently had in his possession, to which he stated three or four, and added he sold the rest at gun shows. SA Kolodziej advised RUTHERFORD of five additional firearms purchased by RUTHERFORD on 02/07/2022 from Alpha Dog Firearms. RUTHERFORD acknowledged purchasing those firearms.

16.     On 02/07/2022, RUTHERFORD purchased the following firearms from Alpha Dog Firearms in Tempe, AZ:

- Ruger     R-57    5.7x28mm    SN 643-50121
- Taurus    G3C    9mm          ACK452024
- Taurus    G3C    9mm          ACN738299
- Taurus    G3C    9mm          ACK452132

4

- Taurus   G3C   9mm        ACN738144

17.     SA Kolodziej again asked RUTHERFORD how many of the seven firearms purchased in the last three days he had in his possession. RUTHERFORD stated that he had none of the firearms still in his possession and advised that he sold all of them at gun shows. RUTHERFORD further stated he was in the process of procuring a Federal Firearms License from Clik Clik Bang so that he could start a business selling firearms. SA Kolodziej asked RUTHERFORD if he was a federal firearms licensee (FFL), which he stated no.

18.     SA Kolodziej asked RUTHERFORD if he had purchased the firearms for someone else, RUTHERFORD said yes. SA Kolodziej asked RUTHERFORD if every firearm he purchased was on behalf of someone else, RUTHERFORD said yes. SA Kolodziej asked who he was buying firearms for, RUTHERFORD advised he had bought the firearms for some friends, stating he did not know their "government names" and referred to the one subject as "D."

19.     SA Kolodziej asked RUTHERFORD to explain how he would buy firearms. RUTHERFORD stated he would call local gun shops to see what they had in stock. RUTHERFORD stated his friends would pick him up and drive him to the gun shops, as he does not have a car. RUTHERFORD stated that he would exit the car, enter the store and purchase firearms. RUTHERFORD stated once he would get back to the vehicle with the firearms, he would receive approximately $100 per firearm purchased. SA Kolodziej asked what happens to the firearms after he hands them off to his friends, RUTHERFORD stated as soon as he gets into the vehicle the firearms are no longer in his possession.

20.     SA Kolodziej again asked RUTHERFORD for the name of the person for whom he purchased firearms. RUTHERFORD was hesitant to answer the question. SA Kolodziej explained the importance of the ATF Form 4473 and the background check. RUTHERFORD advised that he understood. SA Kolodziej again asked why

5

RUTHERFORD was willing to take all the blame for the crimes. RUTHERFORD stated it was due to the fact he lived with that person. SA Kolodziej asked RUTHERFORD if it was his brother; RUTHERFORD said no. RUTHERFORD eventually advised that he straw purchased firearms for his stepfather, named "BELL."

21.     SA Kolodziej located a male with the last name of BELL associated with 249 E. Dry Creek Rd. San Tan Valley, AZ 85143. SA Kolodziej showed a photo of BELL to RUTHERFORD, who immediately advised that was a picture of his stepfather, later identified as Rodrecas L. BELL, Black Male 5'05" 140 lbs. with brown eyes and black hair.

22.     BELL has significant criminal history with felony arrests, but no felony convictions. As recently as February 2, 2022, BELL was arrested by Arizona Department of Public Safety for felony possession of narcotics and felony possession of a stolen firearm and M30 fentanyl pills. SA Kolodziej confirmed this information with the Tempe Police Department.

23.     SA Kolodziej asked RUTHERFORD if he had informed BELL he had been contacted by ATF, RUTHERFORD stated no. RUTHERFORD further stated BELL was aware police were previously at his residence as they were seen on the Ring doorbell camera. SA Kolodziej explained that it would be in RUTHERFORD's best interest to not tell BELL that RUTHERFORD had spoken with ATF. SA Kolodziej asked if BELL would ask RUTHERFORD to purchase more firearms for him; RUTHERFORD stated yes, adding they were supposed to go today.

24.     SA Kolodziej asked RUTHERFORD how he communicated with BELL. RUTHERFORD stated that he lives with BELL and therefore the majority of their communication is in person. RUTHERFORD further stated that BELL would occasionally text him saying "Yo" and then proceed to call to avoid any text history.

25.     SA Kolodziej asked RUTHERFORD if there were any firearms in his residence. RUTHERFORD advised that BELL has been known to carry a firearm but stated that all the firearms he buys are distributed by BELL within days of their purchase. RUTHERFORD does not know where the firearms are distributed to and advised that he only purchases firearms for BELL.

26.     When asked, RUTHERFORD stated that BELL drives a black Nissan Sentra, AZ license plate CVH5860. The 2019 Nissan Sentra is registered to Shawnda M. Cliff at 249 E. Dry Creek Rd., San Tan Valley, AZ 85143. RUTHERFORD confirmed the vehicle and stated that Shawnda Cliff was his mother.

27.     SA Kolodziej inquired whether RUTHERFORD would be willing to cooperate with ATF and advise ATF before any future purchases. RUTHERFORD stated yes and advised that he would be buying firearms from Arizona Firearms in Gilbert, AZ likely on February 10, 2022.

28.     SA Kolodziej informed RUTHERFORD to not purchase any firearms without contacting ATF. SA Kolodziej requested RUTHERFORD contact him and provide him with notice of where he was going to purchase firearms from and when. RUTHERFORD advised he would be in contact.

29.     On February 10, 2022, SA Kolodziej was contacted by RUTHERFORD, who stated that he would not be buying any firearms for a while. SA Kolodziej asked RUTHERFORD to remain in contact with him and advised him not to purchase any additional firearms without contacting ATF.

30.     As of April 11, 2022, SA Kolodziej has not had any additional contact with RUTHERFORD nor has RUTHERFORD returned any of SA Kolodziej's calls.

31.     In February of 2022, SA Kolodziej was informed a Taurus PT111 G2A 9mm pistol with serial number BTAU728, which was purchased on December 21, 2021, at Clik Clik Bang Firearms in Phoenix, AZ, was recovered in Tijuana, Mexico on January 31,

7

2022, with a time-to-crime of 41 days. The purchaser was Jae Shawn RUTHERFORD, who listed his address as 249 E. Dry Creek Rd., San Tan Valley, AZ 85143, and used AZ state ID #XXXXX3187.

32.     On March 1, 2022, RUTHERFORD purchased two Taurus G3Cs from Alpha Dogs Firearms in Tempe, Arizona. RUTHERFORD did not notify SA Kolodziej either pre- or post-purchase. RUTHERFORD had previously agreed to inform agents if he were asked to purchase any firearms. RUTHERFORD also previously advised SA Kolodziej he would not purchase additional firearms. Therefore, your affiant believes that RUTHERFORD is still actively straw purchasing firearms.

### III.   ITEMS TO BE SEIZED

33.     Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found at the **Subject Premises**.

34.     Based on my training, education, experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following:

a.     Firearms traffickers often keep large amounts of United States currency on hand in order to maintain and finance their ongoing trafficking activities. Traffickers commonly maintain such currency where they have ready access to it, such as in their homes and vehicles. It is also common for traffickers to possess firearms proceeds and items purchased with those proceeds in their homes and vehicles. Thus, it is common for currency, expensive jewelry, precious metals, or financial instruments to be found in the possession of firearm traffickers.

b.     Traffickers and persons involved in the manufacturing, distribution, and possession of firearms often possess additional firearms and other weapons, both legal

and illegal, in order to protect their person, and or the proceeds of transactions. Traffickers commonly maintain such firearms and weapons where they have ready access to them, such as on their person, in their homes, and in their vehicles. In addition, other firearm-related items, such as gun pieces, ammunition, gun cleaning items or kits, holsters, ammunition belts, original box packaging, targets, expended pieces of lead, photographs of firearms, and paperwork showing the purchase, storage, disposition, or dominion and control over firearms, ammunition, and related items are commonly possessed by drug traffickers along with their firearms.

        c.     Traffickers often maintain paper records of their firearm trafficking activities. Your Affiant knows that such records are commonly maintained for long periods of time and therefore are likely to be found at the **Subject Premises**.

        d.     Firearm traffickers commonly use computers, cellular telephones, and other electronic devices to communicate with other drug traffickers and customers about drug-related activities through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, firearm traffickers commonly use other capabilities of computers and electronic devices to further their firearm trafficking activities. Therefore, evidence related to firearm trafficking activity is likely to be found on electronic storage media found at the **Subject Premises**, as further described below.

      35.    In addition to items which may constitute evidence, fruits and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the **Subject Premises**, including rent receipts, utility bills, telephone bills, addressed mail, personal identification, keys, purchase receipts, sale receipts, photographs, vehicle pink slips, and vehicle registration.

## IV.   DIGITAL EVIDENCE STORED WITHIN ELECTRONIC STORAGE MEDIA

36.     As described in Attachment B, this application seeks permission to search for records that might be found in or on the **Subject Premises**, in whatever form they are found, including data stored on a cellular telephone or SIM card (hereafter collectively referred to as "electronic storage media"). Thus, the warrant applied for would authorize the seizure of all electronic storage media found in or on the **Subject Premises** and, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

37.     *Probable Cause*. Your Affiant submits that if electronic storage media are found in or on the **Subject Premises**, there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on such media, for at least the following reasons:

a.     Your Affiant knows that when an individual uses certain electronic storage media, the electronic storage media may serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic storage media is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic storage media is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that electronic storage media used to commit a crime of this type may contain data that is evidence of how the electronic storage media was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

b.     Based on my knowledge, training, and experience, your Affiant knows that electronic storage media contain electronically stored data, including, but not limited to, records related to communications made to or from the electronic storage media, such as the associated telephone numbers or account identifiers, the dates and times of the

communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

     c.    Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto an electronic storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on an electronic storage medium, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

     d.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the electronic storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

     e.    As previously set forth in this Affidavit, the targets of this investigation have used cellular telephones to send text messages and telephone calls regarding straw purchases of firearms. Therefore, your Affiant believes that evidence of criminal activity will be found on any electronic storage media found at the **Subject Premises** and that the electronic storage media constitute instrumentalities of the criminal activity.

    38.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of

the crimes described on the warrant, but also for forensic electronic evidence that establishes how the electronic storage media were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be found on any electronic storage media located in or on the **Subject Premises** because:

      a.      Data on a storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. File systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

      b.      As explained herein, information stored within electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the storage medium. This

12

"user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the owner. Further, activity on an electronic storage medium can indicate how and when the storage medium was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on an electronic storage medium may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the existence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera) not previously identified. The geographic and timeline information described herein may either inculpate or exculpate the user of the electronic storage medium. Last, information stored within an electronic storage medium may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

13

c.     A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on an electronic storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, electronic storage medium evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one electronic storage medium is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.     Further, in finding evidence of how an electronic storage medium was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

39.     *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on electronic storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss

of the data either from accidental or intentional destruction. This is true because of the following:

        a.     *The time required for an examination.* As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine electronic storage media to obtain evidence. Electronic storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

        b.     *Technical requirements.* Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the premises. However, taking the electronic storage media off-site and reviewing it in a controlled environment allows for a thorough examination with the proper tools and knowledge.

        c.     *Variety of forms of electronic media.* Records sought under this warrant could be stored in a variety of electronic storage media formats that may require off-site reviewing with specialized forensic tools.

    40.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit seizing, imaging, or otherwise copying electronic storage media that reasonably appear to contain some or all

of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

41.     Because several people share the **Subject Premises** as a residence, it is possible that the **Subject Premises** will contain electronic storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those electronic storage media, the warrant applied for would permit the seizure and review of those items as well.

## V.   **CONCLUSION**

42.     Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence, fruits, and/or instrumentalities of violations of straw purchasing firearms, 18 U.S.C. § 924(a)(1)(A) (Knowing making of false statements), are likely to be found at the **Subject Premises**, which is further described in Attachment A.

_____
Daniel Kolodziej, Special Agent
ATF


Sworn to before me telephonically this 14 day of April, 2022 @ 3:27 pm

_____
HONORABLE DEBORAH M. FINE
United States Magistrate Judge


16